IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUDITH ECKEL, heir-at-law, and JUDITH ECKEL, Administrator of the Estate of RICHARD ECKEL, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:19-cv-02762-DDC-KGG |
| DELMAR GARDENS OF OVERLAND PARK OPERATING, LLC, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the court on the Application for Approval of Wrongful Death Settlement and Allocation of Proceeds (Doc. 32) filed by Plaintiff Judith Eckel ("Plaintiff"). As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing on November 12, 2020. Plaintiff appeared in person and by her attorney Brett Williams. Defendant Delmar Gardens of Overland Park Operating, LLC ("Defendant") appeared by its attorney Elizabeth Moeller. There were no other appearances.

**I.    Findings of Fact**

The court, after being fully advised and after due consideration, finds as follows:

1.    This action has been brought by Plaintiff against Defendant alleging negligence and wrongful death in connection with care and treatment rendered to Richard Eckel while he was a resident of Defendant's nursing facility related to bilateral heel wounds that Plaintiff alleges caused or contributed to cause his death.

2.    Mr. Eckel died on November 16, 2018 and Plaintiff has brought a cause of action for wrongful death pursuant to Kan. Stat. Ann. §§ 60-1901–60-1906.

3. Defendant denies liability and denies that it caused or contributed to cause Mr. Eckel's death.

4. Plaintiff is the surviving spouse of Mr. Eckel, and the wrongful death beneficiary who has brought a wrongful death claim under Kan. Stat. Ann. §§ 60-1901–60-1906.

5. Mr. Eckel was not survived by his parents.

6. Mr. Eckel had three (3) children, natural or adopted: Lee Eckel, Denne Eckel, and Perri Eckel.

7. Plaintiff and the natural children of Mr. Eckel have been given notice of the settlement, of this application to approve the settlement apportionment, and of the hearing on this application as required under Kansas law, and approve of said settlement and distribution.

8. Plaintiff affirms that there are no other heirs at law of Mr. Eckel to give notice of the settlement, this application to approve the settlement apportionment, and of the settlement hearing pursuant to Kan. Stat. Ann. § 60-1905.

9. Plaintiff represents and warrants that she knows of no other wrongful death beneficiary other than as set forth above, and that there are no other wrongful death beneficiaries as defined under Kan. Stat. Ann. §§ 60-1901–60-1906.

10. Plaintiff and Defendant reached a resolution of this matter following mediation, as Plaintiff has testified in court and as set forth in the Final Release, Settlement and Confidentiality Agreement entered into, and Plaintiff now petitions the court to approve the apportionment of the wrongful death settlement proceeds.

11. Plaintiff has employed Brown & Crouppen, P.C. to assist in the prosecution of the above cause of action under a contingency fee arrangement. Her attorneys have informed the court that they fully have investigated the law and the facts pertinent to the above-captioned cause of action, and have advised Plaintiff accordingly. Her attorneys have advised Plaintiff that

her cause of action may be compromised and settled with Defendant upon the terms set forth in this Order and in the Final Release, Settlement and Confidentiality Agreement.

12. Plaintiff and her attorneys have had sufficient time to become fully informed about the nature and extent of damages, the legal merit of the claims made against Defendant, and the uncertain outcome of the litigation.

13. Although Defendant denies liability to Plaintiff of any kind or character, the parties have nevertheless been able to negotiate a compromise and settlement. The gross amount is set forth on Exhibit 1 (referenced in the Application for Approval of Wrongful Death Settlement and Allocation of Proceeds), which was presented to the court as evidence and then withdrawn.

14. Plaintiff and her attorneys believe and have represented to the court that the settlement amount and settlement agreement are fair and reasonable considering all the facts and circumstances and that their approval by this court would be in the best interests of Plaintiff and wrongful death beneficiaries.

15. Plaintiff waives a trial by jury and the right to appeal.

16. At the November 12, 2020 settlement apportionment hearing, the parties asked the court to approve Plaintiff's counsel's attorneys' fees and costs and an apportionment of the settlement proceeds to Mr. Eckel's heirs after deducting for costs, reasonable attorneys' fees, and medical liens. Specifically, Plaintiff asked the court to apportion the gross settlement amount as follows: (1) 22.695% to Plaintiff's attorneys' fees, (2) 12.721% to costs associated with this action, (3) 24.099% to decedent's outstanding medical liens, and (4) 40.485% to Mr. Eckel's heirs. And, Plaintiff asked the court to apportion the 40.485% of the settlement proceeds for the heirs as follows: (1) 58% to Judith Eckel as surviving spouse (or 23.481% of the total

settlement), and (2) 14% to each of Mr. Eckel's children Lee Eckel, Denne Eckel, and Perri Eckel (or 5.668% each of the total settlement).[1]

17.     After reviewing the evidence presented at the hearing, the court is prepared to rule on the proper apportionment of the wrongful death settlement proceeds.

**II.     Legal Standard**

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As stated above, Plaintiff brings this action under the Kansas Wrongful Death Act. The Kansas Wrongful Death Act requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing. Kan. Stat. Ann. § 60-1905. This act provides that the court, first, should allow costs and reasonable attorneys' fees for plaintiff's counsel. *Id.* The act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d

---

[1]     The court intentionally has omitted references to the settlement amounts in this Order because the parties' settlement agreement includes a confidentiality clause. At the November 12, 2020 hearing, the court heard counsel's arguments for maintaining the confidentiality of the settlement figures and finds that the interest in preserving the result of confidential settlement negotiations outweighs the public interest in accessing the settlement amounts here. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).

Specifically, counsel for Defendant explained that her client valued a confidentiality provision governing the settlement. Counsel explained that the confidentiality provision was a material part of her client's decision to settle this hotly contested case and nullifying the provision would subvert the parties' agreement. The courts long have recognized a public interest in supporting private efforts to resolve litigation. Also, here, this interest does not conflict with other public interests. In the Kansas Wrongful Death Act, the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under that Act. As this Order discusses, the Kansas Wrongful Death Act requires court approval of how a settlement apportions the settlement's proceeds among decedent's heirs. *See* Kan. Stat. Ann. § 60-1905. The Act does not require, however, court approval of the settlement amount. *Cf. Adams v. Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137–39 (Kan. 2001) (explaining Kan. Stat. Ann. § 60-1903's requirement for a court or jury "to award fair and just damages" is "associated with trials and verdicts" but not settlements). Because of this role, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the interest in resolving disputed litigation through a confidential settlement.

4

1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each"). The full text of Kan. Stat. Ann. § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act allows for recovery of damages including: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. Kan. Stat. Ann. § 60-1904. The statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transport, Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action). Pecuniary damages are those that "can be estimated in and compensated by money." *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages in a wrongful death action "should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased." *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "mental anguish, bereavement, loss of society, and

loss of companionship." *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### III.  Analysis

The court addresses the distribution of the settlement proceeds in the order that Kan. Stat. Ann. § 60-1905 presents them.

#### A. Costs

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation. *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004). Here, Brown & Crouppen, P.C. represents that it expended costs retaining experts, conducting depositions, filing this action, and mediating with Defendant. The court has reviewed the costs presented at the hearing on Exhibit 1 and finds that they are reasonable. The court thus deducts 12.721% of the wrongful death settlement proceeds to compensate Plaintiff's counsel's reasonable costs.

#### B. Attorneys' Fees

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if

apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Plaintiff's counsel seeks an award of attorneys' fees representing 22.695% of the gross recovery, which represents a smaller fee than the contingency fee agreement counsel reached with Plaintiff. At the hearing on November 12, Plaintiff's counsel described the work conducted to reach the settlement here including gathering relevant medical records, retaining experts and reviewing expert reports, pre-suit negotiations, depositions, and mediation. He also described the contested nature of the case and how the parties have been negotiating the claims at issue here for some time. The court finds the Rule 1.5(a) factors support the requested attorneys' fees for this wrongful death case. *See, e.g.*, *Newton*, 385 F. Supp. 2d at 1108 (finding that a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding that the attorney's one-third contingency fee with plaintiff was reasonable); *Turman v. Ameritruck Refrigerated Trans., Inc.*, 125 F. Supp. 2d 444, 447–48 (D. Kan. 2000) ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions."). The court thus concludes the 22.695% attorney fee award requested by Plaintiff's counsel is reasonable and awards attorneys' fees in the amount presented at the hearing on Exhibit 1.

### C. Apportionment of Settlement

Last, the court considers how to apportion the remaining wrongful death settlement proceeds. Plaintiff's counsel proposed the following apportionment: 24.099% to outstanding

medical liens of the decedent and 40.485% to Mr. Eckel's heirs in the amounts and to the parties listed on Exhibit 1 presented at the hearing.  And, Plaintiff asked the court to apportion the 40.485% of the settlement proceeds allocated to the heirs of the decedent as follows:  (1) 58% to Judith Eckel as surviving spouse (or 23.481% of the total settlement), and (2) 14% to each of Mr. Eckel's children Lee Eckel, Denne Eckel, and Perri Eckel (or 5.668% each of the total settlement).

At the hearing, the court heard testimony from one witness, Judith Eckel.  During her testimony, Judith Eckel confirmed the facts of this case involving her husband's injuries while in Defendant's care and how he passed away several months after being discharged from Defendant's care.  She confirmed that she hired Brown & Crouppen, P.C. to prosecute her case, and that she understands the attorneys spent time investigating and preparing the case both before and after they filed the lawsuit.  Judith Eckel also confirmed that she is satisfied with the work the attorneys performed, and that she fully understands the risks and benefits of settling this case.  She confirmed that she understands that, after attorneys' fees and expenses are paid, 24.099% of the settlement will be used to pay outstanding medical liens of the decedent and then Mr. Eckel's heirs will receive 40.485% of the settlement.  She confirmed she understands that of the settlement amounts apportioned to the heirs, she will receive 58% of that amount (or 23.481% of the total settlement) and each of decedent's children will receive 14% of that amount (or 5.668% each of the total settlement).  She testified that she believes the apportionment is fair and reasonable, that the three other heirs are aware of the settlement and approve of it, and that her counsel has reviewed the settlement agreement with her.  Judith Eckel didn't testify about the losses, pecuniary or otherwise, the heirs sustained, but the court understands they are paramount. After considering the evidence at the hearing, the court concludes the proposed apportionment for medical liens and to Mr. Eckel's heirs is appropriate.

IV. Conclusion

The court apportions the settlement as follows:

| Gross Settlement Proceeds | 100% |
|---|---|
| **Reduction to pay approved costs** | **12.721%** |
| **Attorney fee award (as approved in this Order)** | **22.695%** |
| **Medical liens** | **24.099%** |
| **Judith Eckel** | **23.481%** |
| **Lee Eckel** | **5.668%** |
| **Denne Eckel** | **5.668%** |
| **Perri Eckel** | **5.668%** |

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiff's Application for Approval of Wrongful Death Settlement and Allocation of Proceeds (Doc. 32) is granted and the court apportions the wrongful death settlement proceeds according to and consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2020, at Kansas City, Kansas.

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**